J-A27019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: PRIVATE CRIMINAL COMPLAINT OF ERIC G. MARTTILA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: ERIC G. MARTTILA | No. 3526 EDA 2015 |

Appeal from the Order October 19, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-MD-0001522-2015

BEFORE: PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:       **FILED JANUARY 05, 2017**

Eric G. Marttila, Esquire, appeals from the order, entered in the Court of Common Pleas of Bucks County, which denied his petition for review of the Bucks County District Attorney's decision to disapprove his private criminal complaint. Upon review, we affirm.

The trial court summarized the relevant facts of this matter as follows:

[Attorney Marttila] represented Paul Bradberry in two criminal actions wherein Bradberry was charged with [r]esisting [a]rrest, [d]isorderly [c]onduct, [p]ublic [d]runkenness, and [c]riminal [m]ischief in relation to a March 17, 2013 incident. After a bench trial before this [c]ourt, Bradberry was found not guilty of each charge on November 12, 2013. In acquitting Bradberry, this [c]ourt accepted Bradberry's testimony and further found Officer Keith [Dietz] of the Doylestown Borough Police Department, who was the affiant and Bradberry's arresting officer, to be less than forthright in his testimony before the

---

[*] Former Justice specially assigned to the Superior Court.

[c]ourt. Specifically, we noted in delivering the verdict of the [c]ourt:

> [I]t's a difficult case, not because it's difficult for me to decide what the true facts are and what really happened, it's difficult for me because I have to accept the fact that these things happened here in Bucks County in Doylestown Borough. . . . [I]t's shocking. For me to suggest [] that Officer [Dietz] was mistaken would be a [] miscarriage of my oath of office.
>
> . . .
>
> [I]n attempting to reconcile the evidence and the testimony of all [of the] witnesses, I have come to the inescapable conclusion that Officer [Dietz] was anything but candid with this [c]ourt in his testimony, in his reports and in the evidence that he presented. That evidence is contrary to the evidence of the other officers and by all means contrary to the testimony of the defendant or the defendant's witnesses. And for what it's worth, [] I accept the testimony of Mr. Bradberry in its entirety in my determination of whether the Commonwealth has met its burden of proof in this matter.

N.T. [Trial, 11/13/13, at] 260-62.

As a direct result of the evidence presented and reports prepared in Bradberry's case, [Attorney Marttila] filed a private criminal complaint in District Court on January 30, 2015[,] charging Officer [Dietz] with multiple counts of [p]erjury, [f]alse [s]wearing, [u]nsworn [f]alsification to [a]uthorities, and [f]alse [r]eports to [l]aw [e]nforcement [a]uthorities that arose from seven (7) alleged criminal acts. In support of the above charges, [Attorney Marttila] specifically referenced Officer [Dietz's] testimony at trial, during the two (2) separate preliminary hearing[s], and during a deposition in a civil matter arising from the Bradberry case, along with Officer [Dietz's] prepared reports, including his Affidavit of Probable Cause and Supplemental Narrative Report. In a letter dated May 29, 2015, the District Attorney of Bucks County, David W. Heckler, disapproved of the charges in [Attorney Marttila's] Complaint, citing a lack of prosecutorial merit and insufficient evidence.

On June 16, 2015, [Attorney Marttila] filed with this [c]ourt a "Petition for Review of Decision by the District Attorney of Bucks

County to Disapprove Private Criminal Complaint Pursuant to Pa.R.C.P. 506(b)(2)." A hearing was held on [Attorney Marttila's] Petition on September 3, 2015, during which argument was presented by both [Attorney Marttila] and Mr. Heckler and additional evidence, unavailable during trial, was added to the record. On the basis of the argument presented and a detailed review of the record, this [c]ourt denied [Attorney Marttila's] Petition on October 19, 2015. [Attorney Marttila] filed at timely Notice of Appeal to the Superior Court on November 18, 2015[,] from this [c]ourt's [d]enial of his Petition.

Trial Court Opinion, 2/9/16, at 1-3 (footnotes omitted).

On appeal, Marttila raises the following issues for our review:

1. Did the trial court err in failing to correctly identify the nature of the District Attorney's reasons for acting or failing to act?

2. Did the trial court err in failing to apply a *de novo* standard of review?

3. Did the trial court err in failing to determine that the district attorney's decision to disapprove the private criminal complaint in this case represented a deviation from moral rectitude and sound thinking, and, therefore, constituted an act of bad faith?

Brief of Appellant, at 2.

Pennsylvania Rule of Criminal Procedure 506 provides for the submission of private criminal complaints to an attorney for the Commonwealth, "who shall approve or disapprove it without unreasonable delay." Pa.R.Crim.P. 506(A). The rule further provides that "if the Commonwealth's attorney disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision." Pa.R.Crim.P. 506(B)(2).

In cases involving the disapproval of a private criminal complaint, the review conducted by the trial court and our standard of review are dependent upon the reason for disapproval. "[W]hen the district attorney disapproves a private criminal complaint **solely** on the basis of legal conclusions, the trial court undertakes *de novo* review of the matter. Thereafter, the appellate court will review the trial court's decision for an error of law." **In re Wilson**, 879 A.2d 199, 214 (Pa. Super. 2005) (en banc) (emphasis in original). However,

> when the district attorney disapproves a private criminal complaint [wholly on] policy considerations, or on a hybrid of legal and policy considerations, the trial court's standard of review of the district attorney's decision is abuse of discretion. This deferential standard recognizes the limitations on judicial power to interfere with the district attorney's discretion in these kinds of decisions.
>
> The private criminal complainant has the burden to prove the district attorney abused his discretion, and that burden is a heavy one. In the Rule 506 petition for review, the private criminal complainant must demonstrate the district attorney's decision amounted to bad faith, fraud or unconstitutionality. The complainant must do more than merely assert the district attorney's decision is flawed in these regards. The complainant must show the facts of the case lead only to the conclusion that the district attorney's decision was patently discriminatory, arbitrary or pretextual, and therefore not in the public interest. In the absence of such evidence, the trial court cannot presume to supervise the district attorney's exercise of prosecutorial discretion, and should leave the district attorney's decision undisturbed.
>
> Thereafter, the appellate court will review the trial court's decision for an abuse of discretion, in keeping with settled principles of appellate review of discretionary matter. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the

judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Id.* at 215 (citations and quotation marks omitted).

Instantly, when the Commonwealth disapproved the complaint, it noted that it was doing so because it had determined that insufficient evidence existed in the case and because the matter lacked prosecutorial merit.  As we noted in *Commonwealth v. Metzker*, 658 A.2d 800 (Pa. Super. 1995),

> once the complaint establishes a *prima facie* case, the prosecutor cannot rest the disapproval on a legal assessment of the complaint. . . .  The Commonwealth may exercise discretion . . . on the basis of policy.  A determination that the case lacks "prosecutorial merit" is such a policy determination.  Courts will not disturb that decision unless there is a gross abuse of discretion.

*Id.* at 801.  The Commonwealth investigated the allegations against Officer Dietz, determined that the case against him could not be successfully prosecuted, and used its discretion to disapprove the complaint. Accordingly, the trial court correctly applied an abuse of discretion standard in reviewing the disapproval of the complaint.  *Wilson*, *supra*.  Therefore, Attorney Marttila's first two issues raised are without merit.

In his final issue raised, Attorney Marttila asserts that the decision to disapprove the complaint was an act of bad faith because it represented a "deviation from moral rectitude and sound thinking."  *Commonwealth v. Brown*, 708 A.2d 81, 86 (Pa. 1998); *see* Brief of Appellant, at 27-28. Attorney Marttila argues the disapproval of the complaint was an act of bad

faith on several grounds. For the following reasons, we disagree as to each ground upon which Attorney Marttila relies.

The first instance of alleged falsification Attorney Marttila raises involves sworn statements Officer Dietz made in the affidavit of probable cause and in the police criminal complaint in the Bradberry case. Officer Dietz indicated that Bradberry tore his police badge off his uniform and intentionally damaged it. Attorney Marttila asserts that this was false, because at Bradberry's second preliminary hearing, Officer Dietz testified that he did not know how the badge was removed or how it was damaged. At trial, Officer Dietz testified that he did not see exactly how his badge was destroyed, only affirming that he wore it prior to struggling with Bradberry during his arrest and that afterward it was recovered from the scene in a bent and damaged condition. However, Officer Dietz added to this explanation, saying that "[i]t's my belief that he damaged the badge somehow. And it says [in the affidavit], to the best of my knowledge, information and belief." N.T. Trial, 11/12/13, at 147. Accordingly, the trial court did not abuse its discretion in reviewing the policy decision of the District Attorney. *Metzker*, *supra*.

Attorney Marttila also asserts that Officer Dietz falsified a supplemental narrative report by stating in it that during closing argument at a preliminary hearing, Attorney Marttila had "made clear to [Magisterial District] Judge [Mark D.] Douple that they were friends and had worked with each other for a long period of time[.] . . . [Attorney Marttila] continued to remind the

Judge about their past working relationship." Supplemental Narrative Report, Officer Keith Dietz, 4/20/13. However, at trial, Officer Dietz testified that he wrote down only what he heard Attorney Marttila say and that he did not believe any collusion to be taking place between Attorney Marttila and Judge Douple. N.T. Trial, 11/12/13, at 151, 160. Additionally, no stenographer was present at the hearing, so no transcript exists and the exact statements made during the hearing cannot be precisely proven. Accordingly, we discern no abuse of discretion on the part of the trial court in denying the petition. *Metzker*, *supra*.

Next, Attorney Marttila claims that Officer Dietz lied under oath when he testified to using his Taser on Bradberry and being "face-to-face, chest-to-chest" when doing so. *See* N.T. Preliminary Hearing, 8/27/13, at 68; N.T. Trial, 11/12/13, at 124. Attorney Marttila raises this argument because of other testimony that Bradberry was facing away from Officer Dietz during their interaction and because Bradberry suffered Taser burn marks on his back. We note that the "face-to-face" and "chest-to-chest" language was that of Attorney Marttila during cross-examination, to which Officer Dietz replied affirmatively, rather than being Officer Dietz's characterization of the situation. Moreover, certain photographic evidence came to light only after the conclusion of the Bradberry matter. As the trial court noted, "[the four] photographs illustrate striation marks stretching from Bradberry's left chest, across his left side, and onto Bradberry's back. This evidence provides reasonable doubt that Officer [Dietz made]

- 7 -

intentional misstatements in his description of his encounter with Bradberry[.]" Trial Court Opinion, 2/9/16, at 9. Therefore, the trial court did not abuse its discretion in denying the petition. *Metzker*, *supra*.

Finally, Attorney Marttila argues that Officer Dietz lied in a deposition in a related federal civil rights lawsuit, when he indicated that he had never testified prior to that date to deploying his Taser into Bradberry's back *because* Attorney Marttila had interrupted him every time he testified and had prevented him from doing so. Officer Dietz stated in the deposition that when he deployed his Taser, it was on Bradberry's left torso, which included his front and back sides, but that "when [Attorney Marttila] got the answer [he was] happy with, [he] cut [Officer Dietz] off and moved on." Deposition of Keith Dietz, 8/20/14, at 130. The very nature of this testimony indicates that proving the charge would be difficult and it was not an abuse of discretion for the trial court to deny the petition. *Metzker*, *supra*.

For the foregoing reasons, we do not agree that disapproval of the complaint was a "deviation from moral rectitude and sound thinking," *Brown*, *supra*, and we find that the trial court did not abuse its discretion in denying Attorney Marttila's petition for review of the disapproval of the private criminal complaint. *Wilson*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/5/2017</u>